# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| K.W., a minor by parent and natural guardian Nicholas Wiser; and Nicholas Wiser, in his own right ) ) ) ) **Plaintiff,** ) ) v. ) ) The Ellis School, ) ) ) **Defendant.** ) ) ) ) | Civil Action<br><br>No. _____<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

As set forth below, K.W., a minor by her parent and natural guardian Nicholas Wiser, and Nicholas Wiser, by and through the undersigned counsel, claim violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, and its implementing regulations, as well as the implementing regulations of Section 504 of the Rehabilitation Act of 1973, and breach of contract under Pennsylvania law. Mr. Wiser alleges that the Ellis School retaliated against him based on his relationship to a person with a disability, and unreasonably exercised its discretion to dis-enroll his daughter, K.W., from its program. Furthermore, Mr. Wiser alleges that the Ellis School discriminated against K.W. on the basis of her disability, denying her a free appropriate public education.

## PARTIES

1. Plaintiff Nicholas Wiser is a resident of Brentwood, Pennsylvania. His daughter, Plaintiff K.W., attended Defendant for fifth grade during the 2016-17 school year. K.W. is an individual with a disability, having been previously diagnosed with an anxiety disorder and ADHD.

2. Defendant The Ellis School is an independent, all-girls, college-preparatory school located in the Shadyside neighborhood of Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Defendant is located in this venue and the events giving rise to the claims at issue occurred in the venue.

## FACTUAL ALLEGATIONS

5. Mr. Wiser is the father of K.W. K.W. is an 11-year-old student who, until recently, attended Defendant for elementary and middle school. K.W. has been diagnosed with an anxiety disorder and ADHD.

6. On July 7, 2016, Mr. Wiser provided Defendant with an evaluation report confirming a preliminary diagnosis of ADHD, pending additional data, as part of his request for accommodations during the upcoming fifth grade school year. The initial report stated that K.W. struggled with her working memory and had associated executive dysfunction. The evaluation recommended the following strategies to assist K.W. in school: coaching of verbal mediation strategies, provision of a written checklist for steps to complete a

task, assistance with structure planning including the use of a planning guide, the breakdown of large assignments into smaller steps, review of her assignment planner with a teacher, and to-do lists and other assistance in initiating work.

7. Defendant agreed to provide accommodations to K.W. to support her needs for organizational support and stress management.

8. On March 7, 2017, Mr. Wiser provided Defendant with an additional letter from K.W.'s social worker noting that she was diagnosed with an anxiety disorder and ADHD. The letter also included the following recommendations for school-based modifications: extra time on tests, extra instructional time as needed, support in transitions throughout the day, check-ins throughout the day regarding mood and stress levels, a regular meeting with a support teacher to verify understanding of basic organizational and test preparation skills, and preferential seating in classes away from typical distractions.

9. Despite agreeing to implement the recommended accommodations, Defendant only occasionally provided extra time for tests to K.W. and provided no other accommodations.

10. At the end of the 2016-2017 school year, K.W. ran for the position of sixth grade president.

11. During the election, K.W. gave a speech to her classmates in which she stated that the class needed more organization, as things that year were handled last minute and were chaotic. She explained that she wanted groups to include everyone rather than excluding some students. She also discussed starting a support group for students who had been bullied, stopping stealing that occurred at school, changes to how students arrived at lunch, and planning fun activities.

12. Soon after K.W.'s speech, teachers pulled her aside to discuss the speech.  They asked her to clarify her comments about the year being disorganized and people stealing.  They also stated that she hurt the feelings of the current class president.

13. K.W. was elected sixth grade president.

14. As part of her preparation for the upcoming year, K.W. distributed a survey to her classmates.  This survey included questions about ideas for fundraising, things that should be changed, causes of conflicts at school, and treatment of students by other students.

15. When K.W. distributed the survey to classmates in the hallway, a teacher took the survey out of one student's hands and threw it in the trash.

16. Another teacher approached K.W. to make negative comments about her speech.

17. K.W.'s treatment by Defendant's staff caused her emotional stress and to "feel like trash."  As noted in the medical documentation provided to Defendant, K.W.'s disabilities impact her mood and stress levels.

18. In preparation for the 2017-2018 school year, Mr. Wiser signed the Re-Enrollment Contract and paid K.W.'s tuition.

19. The contract included the following provision:

> I (we) and my (our) daughter agree to comply with and be subject to the School's rules and policies as set forth, including but not limited to, the Family Handbook, as amended from time to time.  The School believes positive and constructive working relationships between the School, the student, and the student's parent(s) (or guardian(s)) are essential to the fulfillment of the School's mission.  Thus, the School reserves the right to discontinue enrollment or decline re-enrollment of the student if the School concludes the actions of a parent (or guardian) make such a positive and constructive relationship impossible or seriously interfere with the School's accomplishment of its educational purposes, or if Ellis concludes that the needs or demands made by or on behalf of the

       student place an undue or unreasonable burden on Ellis' resources. Ellis further reserves the right to remove a student at any time if, at its sole discretion, it concludes that the student's industry, progress, conduct, or influence on or off campus are not keeping with Ellis' standards.  The decision of the School in these regards shall be final.

20. On June 1, 2017, Michelle Rust, the Head of the Middle School, e-mailed Mr. Wiser expressing concerns about K.W.'s actions during and after the campaign.  She stated that K.W.'s speech "caused some hurt feelings among classmates."  She explained that K.W. should have obtained approval for the survey prior to distribution, and that some questions could cause hurt feelings among other students.

21. In response, Mr. Wiser sent an e-mail, which he also sent to the other fifth grade parents and guardians.  He explained that K.W.'s speech was not about the fifth-grade president or previous administration.  He also expressed his concern that K.W. had been singled out and harassed multiple times over the previous weeks by teachers.  He stated that the survey was K.W.'s attempt at being a leader and addressing issues that mattered to her.  Mr. Wiser asserted that K.W. should not feel attacked for standing up for herself and others.  He continued to express his concerns about students being excluded and bullied.  He stated that Defendant had a responsibility to foster social tolerance in its students and not allow discrimination.  He explained that students and parents did not express concerns because they did not want to be viewed as troublemakers, face additional exclusion, or be negatively impacted in their financial aid packages.  Mr. Wiser emphasized that he was not attempting to cause trouble, but rather wanted to clarify misunderstandings and to express his concerns about K.W.'s treatment.  He explained that K.W. was coming home upset from school because of her treatment by teachers and students.

22. In the years since K.W. started attending Defendant, Mr. Wiser has had numerous discussions and sent numerous e-mails to Defendant regarding K.W.'s symptoms and behaviors. These meetings and e-mails correlated to the issues Mr. Wiser mentioned in his June 1, 2017 e-mail, which were ultimately attributable to K.W.'s disabilities.

23. On June 29, 2017, Defendant provided Mr. Wiser with a letter from Head of School Robin Newham, which informed him that it had decided to discontinue K.W.'s enrollment, effective immediately.  Ms. Newham explained that Mr. Wiser's decision to share his e-mail with all fifth-grade parents and guardians showed "poor judgment."  She further stated that the e-mail contained "a number of unfounded statements about Ellis, the Middle School administration, faculty, families, and students."  She concluded that, taken together, the statements and way Mr. Wiser communicated the statements showed that he had low regard for the interests of the Ellis School, its students, and their families. Ms. Newham noted that the school was exercising its discretion based on the determination that Mr. Wiser's actions made a positive and constructive relationship impossible, or seriously interfered with the school's accomplishment of its educational purpose.

24. Although Mr. Wiser received a refund from Defendant for the tuition paid in anticipation of the 2017-18 school year, he was not refunded the $175.00 he had prepaid in fees.

25. Because K.W. was unable to return to Defendant's program for the 2017-18 school year, Mr. Wiser filed an application for admission with St. Edmund's Academy, which included a non-refundable fee of $50.

26. St. Edmund's Academy accepted K.W.'s application and she will attend their program for the 2017-18 school year. As a result of this enrollment, Mr. Wiser was forced to pay $5,146.71 more than he would have had K.W. returned to Defendant's program.

COUNT I: RETALIATION UNDER THE ADA

27. Mr. Wiser incorporates the allegations in paragraphs 5 through 26 above as though fully set forth herein.

28. As previously described, Mr. Wiser has repeatedly requested that Defendant implement the accommodations suggested by K.W.'s medical providers.

29. The ADA makes unlawful retaliation against an individual because that person "has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a).

30. To establish retaliation under the ADA, a plaintiff must show: (1) protected activity; (2) adverse action after or contemporaneous with protected activity; and (3) causal connection between the protected activity and the adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

31. Mr. Wiser was engaged in statutorily protected activity when he advocated for his daughter through e-mails, culminating in the June 1, 2017 e-mail. Mr. Wiser's e-mails specifically addressed the accommodations K.W. needs based on her disability, and included requests that Defendant properly implement these accommodations. His June 1, 2017 e-mail expressed concerns for K.W.'s mood and stress level, which are also significantly impacted by her disabilities.

32. Mr. Wiser was the target of adverse action in the form of Defendant dis-enrolling K.W. from school.

7

33. There is a clear causal connection between the protected activities (e-mailing Defendant requesting accommodations and e-mailing Defendant with concerns about K.W.'s mood and stress levels) and Defendant's retaliation (dis-enrolling K.W., with Mr. Wiser's June 1, 2017 e-mail identified as the cause).

34. The record supports Mr. Wiser's retaliation claim, and thus, Defendant violated the rights provided him by the ADA.

## COUNT II: RETALIATION UNDER SECTION 504

35. Mr. Wiser incorporates the allegations in paragraphs 5 through 34 above as though fully set forth herein.

36. Section 504 of the Rehabilitation Act provides specific protections for parents who seek educational services for their children.  34 C.F.R. 100.7(e).

37. In *Lauren W. ex rel. Jean W. v. DeFlaminis*, the Court established a three-part test: (1) did the parent engage in protected activities; (2) was the parent the target of adverse action by the school; and (3) was there a causal connection between the protected activity and the retaliation.  480 F.3d 259, 267 (3d Cir. 2007).

38. As previously described, Mr. Wiser has repeatedly requested that Defendant implement the accommodations suggested by K.W.'s medical providers.

39. Mr. Wiser was engaged in statutorily protected activity when he advocated for his daughter through e-mails, culminating in the June 1, 2017 e-mail.  Mr. Wiser's e-mails specifically addressed the accommodations K.W. needs based on her disability, and included requests that Defendant properly implement these accommodations.  His June 1, 2017 e-mail expressed concerns for K.W.'s mood and stress level, which are also significantly impacted by her disabilities.

40. Mr. Wiser was the target of adverse action in the form of Defendant dis-enrolling K.W. from school.

41. There is a clear causal connection between the protected activities (e-mailing Defendant requesting accommodations and e-mailing Defendant with concerns about K.W.'s mood and stress levels) and Defendant's retaliation (dis-enrolling K.W., with Mr. Wiser's June 1, 2017 e-mail identified as the cause).

42. Upon information and belief, Defendant receives federal funding.

43. The record supports Mr. Wiser's retaliation claim, and thus, Defendant violated the rights provided him by the implementing regulations of Section 504.

COUNT III: DISCRIMINATION UNDER THE ADA

44. Mr. Wiser incorporates the allegations in paragraphs 5 through 43 above as though fully set forth herein.

45. Title III of the ADA prohibits independent non-religious schools from discriminating against people with disabilities by failing to make reasonable modifications in policies, practices, or procedures, when these modifications are necessary for individuals with disabilities to have equal access to school programs, unless the school can demonstrate that making such modifications would fundamentally alter the nature of the school programs.  *See* 42 U.S.C. §§ 12132, 12182(7)(J), 12182(b)(2)(A)(ii).

46. To establish a Title III claim, a plaintiff must show that: (1) she has a disability within the meaning of the ADA; (2) she was discriminated against on the basis of that disability; (3) she was thereby denied services; and (4) the defendant owns, leases, or operates a place of public accommodation.  *Bardelli v. Allied Servs. Inst. of Rehabilitation Medicine*, No. 3:14-0691, 2016 WL 5723724 at *7 (M.D. Pa. September 30, 2016).

47. Under the ADA, disability is defined as "a physical or mental impairment that substantially limits one or more major life activities . . . [.]" 42 U.S.C. § 12102(1)(A).

48. Major life activities include learning, concentrating, and thinking. 42 U.S.C. § 12102(2)(A).

49. K.W. has a disability under the meaning of the ADA because her ADHD and anxiety disorder substantially limit her learning, concentrating, and thinking.

50. Defendant discriminated against K.W. on the basis of her disabilities when it failed to make reasonable modifications to its curriculum and educational practices to allow her equal access to its school program.

51. As a result of this failure to reasonably accommodate, K.W. was denied equal access to Defendant's educational program and extracurricular activities.

52. As a private non-religious school, Defendant is a place of public accommodation under the ADA. *See* 42 U.S.C. § 12182(7)(J).

53. The record supports K.W.'s discrimination claim, and thus, Defendant violated the rights provided to her under Title III of the ADA.

COUNT IV: DENIAL OF FAPE UNDER SECTION 504

54. Mr. Wiser incorporates the allegations in paragraphs 5 through 53 above as though fully set forth herein.

55. Section 504 of the Rehabilitation Act prohibits recipients of federal funding from discriminating on the basis of disability. 29 U.S.C. § 794(a).

56. Discrimination on the basis of disability is established upon a showing that: (1) a student is "disabled" under the Act; (2) she is otherwise qualified to participate in school activities; (3) the district receives federal financial assistance; and (4) the student was

excluded from participation in, denied the benefits of, or subject to discrimination at the school. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999). Additionally, it must be established that the defendant knew or should be reasonably expected to have known of her disability. *Id*.

57. Discrimination prohibited by Section 504 includes the failure to provide "a free appropriate public education to each qualified handicapped person." *Id*.

58. A free appropriate public education ("FAPE") is "the provision of regular or special education and related services that . . . are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(b)(1).

59. K.W. is disabled under the Act because her disabilities of ADHD and anxiety disorder substantially limit her learning and concentrating. *See* 29 U.S.C. §§ 705(20), 794(a); *see also* 42 U.S.C. § 12102(1)-(2).

60. K.W. is otherwise qualified to participate in the general education curriculum in Defendant's program.

61. Upon information and belief, Defendant receives federal financial assistance.

62. Defendant knew of K.W.'s disabilities pursuant to the July 7, 2016 and March 7, 2017 e-mails from Mr. Wiser, which contained attachments from K.W.'s medical providers.

63. K.W. was denied the benefits of Defendant's educational program when Defendant failed to provide accommodations for her disabilities, despite her Section 504 eligibility. As a result, she was denied a benefit provided to all students—a free, appropriate public education—solely because of her disabilities.

64. The record supports K.W.'s denial of FAPE claim, and thus, Defendant violated the rights provided her under Section 504.

COUNT V: BREACH OF CONTRACT

65. Mr. Wiser incorporates the allegations in paragraphs 5 through 64 above as though fully set forth herein.

66. To establish a breach of contract claim under Pennsylvania law, a party must establish: (1) the existence of a contract; (2) a breach of duty imposed by the contract, and (3) damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).

67. In Pennsylvania, the implied duty of good faith "is not limitless. Rather, there must be some relationship to the provisions of the contract itself to invoke the duty of good faith." *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 170 (3d Cir. 2013).

68. Mr. Wiser and Defendant were parties to the Re-Enrollment Contract, a binding contract.

69. The contract gave Defendant the unilateral discretion to decline enrollment or dis-enrollment K.W. in certain circumstances. These circumstances included when the parent's actions were a significant challenge to Defendant's ability to maintain a positive and constructive relationship, and when the parent's actions seriously interfered with Defendant's educational purposes.

70. Based on its unilateral ability to end the contract, Defendant had an implied duty of good faith in exercising that ability.

71. Defendant breached the duty owed to Mr. Wiser when it unreasonably exercised its discretion to dis-enroll K.W.

72. Upon information and belief, Defendant has elected not to exercise its discretion to dis-enroll a student in a similar situation involving actions of a parent.

73. Defendant acted unreasonably in interpreting the language of the contract to find that Mr. Wiser's statements and actions were sufficient to constitute actions that were a significant challenge to Defendant's ability to maintain a positive and constructive relationship, and actions that seriously interfered with Defendant's educational purposes.

74. Because of this breach, Mr. Wiser suffered damages in that K.W. was not allowed to continue in Defendant's program going forward.

75. Monetary damages do not adequately compensate Mr. Wiser for his daughter's inability to continue her education in Defendant's program.  The value of an education with Defendant goes beyond the actual costs.  Defendant's program provides a high level of education and prestige.  Furthermore, it is the only non-religious, all-girls school in the Pittsburgh area that provides education from pre-kindergarten to high school.

76. Therefore, only specific performance of the contract—allowing K.W. to return to Defendant for the 2018-19 school year—would make Mr. Wiser whole.

77. The record supports Mr. Wiser's breach of contract claim.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendant as follows:

a) An order requiring Defendant to permit K.W. to re-enroll in Defendant's program for the 2018-19 school year at the same level of financial aid and with her title of class president, and also to provide reasonable accommodations, including but not limited to extra instructional time as needed, support in transitions throughout the day, check-ins regarding stress and mood levels, a regular meeting with a support teacher to verify

understanding of basic skills for organization, test preparations and prioritizing, preferential seating in classes away from typical distractions, and additional time on tests;

b) A determination that Defendant denied K.W. a free appropriate public education when it failed to provide reasonable accommodations for her disabilities;

c) Compensatory education for the 2016-17 school year during which Defendant denied K.W. a free, appropriate public education;

d) Reimbursement of the cost of the application fees Plaintiff was required to pay to ensure K.W. had an educational placement for the 2017-18 school year;

e) Reimbursement of the difference in tuition and fees Plaintiff was required to pay to ensure K.W. had an educational placement for the 2017-18 school year;

f) Reimbursement of the fees Plaintiff prepaid to Defendant in anticipation of the 2017-18 school year;

g) Compensatory damages;

h) Punitive damages;

i) Attorneys' fees and costs; and

j) Such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Kristen C. Weidus*

Kristen C. Weidus, Esq.
Attorney I.D. No. 313486
Ruder Law
429 Forbes Avenue, Suite 450
Pittsburgh, PA 15219
Phone: (412) 281-4959
Fax: (412) 291-1389
Email: kristenweidus@ruderlaw.com