IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| K.W., a minor by parent and natural guardian NICHOLAS WISER; and NICHOLAS WISER, in his own right, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:17-cv-01189-CB |
| v. | ) ) | CIVIL ACTION - LAW |
| THE ELLIS SCHOOL, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULES 12(b)(1) and
12(b)(6)**

Defendant The Ellis School ("Ellis") respectfully submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Complaint Under Rules 12(b)(1) and 12(b)(6):

## I.    INTRODUCTION

This five-count lawsuit[1] challenges Ellis's disenrollment of Plaintiff's minor daughter in June of 2016, as a result of an e-mail Plaintiff wrote to the Head of the Middle School and all of the parents and guardians of his daughter's classmates. Because Plaintiff concedes that Ellis has a broad contractual right to end its relationship with a student "if [it] concludes the actions of a parent… make… a positive and

---

[1] Three counts were brought on Plaintiff's, Nicholas Wiser's ("Plaintiff"), own behalf (Count I-retaliation under Title V of the Americans with Disabilities Act of 1990; Count II-retaliation under Section 504 of the Rehabilitation Act of 1973, and Count V-breach of contract) and two counts were brought on behalf of his 11-year-old daughter, K.W. (Count III-failure to provide reasonable modifications under Title III of the Americans with Disabilities Act of 1990 and Count IV - denial of a free, appropriate public education under Section 504 of the Rehabilitation Act of 1973).

constructive relationship impossible or seriously interfere with [its] accomplishment of its educational purposes," Plaintiff is left with a hodgepodge of odd arguments.  Plaintiff argues that Ellis somehow breached the duty of good faith that is implied into every *private* educational contract (Count V) while simultaneously claiming, "[u]pon information and belief," that Ellis is a federal-funds-receiving *public* educational institution that violated the Rehabilitation Act (Counts II and IV) by failing to provide requested modifications and engaging in disability-related discrimination and retaliation (allegations which, notably, were never raised by Plaintiff via the mandatory administrative process set forth by the Individuals with Disabilities Education Act ("IDEA")).[2]  (Complaint at ¶¶ 18-23, 42, 52, 55, 61, 68-69 (Doc. No. [1])).  The allegation that Ellis retaliated against Plaintiff for sending the above referenced e-mail in violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") fails because the e-mail, which makes no disability-related complaints, does not constitute legally recognized protected activity upon which a retaliation claim must be based.  (Counts I and II).  Plaintiff also requests a myriad of damages that are simply not available under the laws and claims asserted in the Complaint.  Given that each of the Complaint's five Counts has fatal legal flaws, Ellis files the instant Memorandum of Law requesting that this Honorable Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

---

[2] While Ellis understands that Plaintiff's allegations must be taken as true for purposes of ruling on its Motion to Dismiss, it should be noted that as part of the meet and confer process, Ellis provided Plaintiff with various documents, including Ellis's publicly-filed IRS 990 forms, evidencing that it does not receive federal funds.  Plaintiff has refused to amend his Complaint and remove his Rehabilitation Act claims despite being unable and/or unwilling to provide Ellis with any information about the basis for his belief that it receives federal funds.  Should this Honorable Court not dismiss Plaintiff's Rehabilitation Act claims for the reasons set forth in this Memorandum, Ellis anticipates filing a Motion for Summary Judgment on this issue in the future.

## II.   <u>STATEMENT OF FACTS</u>[3]

Ellis is an independent, all-girls college-preparatory school located in the Shadyside neighborhood of Pittsburgh, Pennsylvania.   (Compl. at ¶ 2).   Plaintiff's daughter (referred to in the Complaint as "K.W.") attended Ellis until the end of the 2016-17 school year, upon completion of the fifth grade.   (*Id.* at ¶¶ 1, 5, 23).

In preparation for the sixth grade, Plaintiff executed a contract for K.W. to attend Ellis for 2017-18 school year (the "Contract").   (*Id.* at ¶¶18-19).   The contract explicitly gives Ellis the discretion to terminate the contract and dis-enroll any student as follows:

> I (we) and my (our) daughter agree to comply with and be subject to the School's rules and policies as set forth, including but not limited to, the Family Handbook, as amended from time to time. The School believes positive and constructive working relationships between the School, the student, and the student's parent(s) (or guardian(s)) are essential to the fulfillment of the School's mission. Thus, <u>the School reserves the right to discontinue enrollment or decline re-enrollment of the student if the School concludes the actions of a parent (or guardian) make such a positive and constructive relationship impossible or seriously interfere with the School's accomplishment of its educational purposes,</u> or if Ellis concludes that the needs or demands made by or on behalf of the student place an undue or unreasonable burden on Ellis' resources. Ellis further reserves the right to remove a student at any time if, at its sole discretion, it concludes that the student's industry, progress, conduct, or influence on or off campus are not keeping with Ellis' standards. The decision of the School in these regards shall be final.

(*Id.* at ¶ 19; Exhibit A, attached hereto)(emphasis added.)

On June 29, 2017, prior to the start of the 2017-18 school year, Ellis informed Plaintiff that it had decided to terminate the contract with Plaintiff for the upcoming 2017-18 school year (the "Contract").   (Compl. at ¶ 23).   Ellis specifically invoked the highlighted language above and cited specific conduct of Plaintiff that made a positive

---

[3] For the purposes of this Memorandum, Ellis does not contest the facts as alleged by Plaintiff.  Ellis reserves the right to admit or deny, in whole or in part, each allegation in future pleadings.

and constructive relationship impossible and seriously interfered with Ellis's ability to accomplish its educational purposes.  (*Id.* at ¶¶ 23, 33).  The conduct cited by Ellis was an e-mail that Plaintiff sent to Ellis's Head of the Middle School, Michelle Rust, and the parents/guardians of the entire fifth grade class, on June 1, 2017.  (Compl. at ¶¶ 21, 23; Exhibit B, attached hereto).  Responding to concerns Ms. Rust had raised regarding certain actions of K.W. (such as a speech K.W. gave to the fifth grade class as the class president elect for the next school year), Plaintiff's e-mail rejected Ellis's right to set rules and standards for its students, including K.W., and levied a myriad of complaints against Ellis, the teaching staff, the 5th grade students and their families (the "June 1 e-mail").  (Compl. at ¶¶ 20, 21; Exhibits B and C, attached hereto).  The June 1 e-mail objected to Ellis counseling K.W. about the comments in her speech that hurt her fellow classmate's feelings, stating that Plaintiff "cannot sit idly by" if K.W. was "made to feel like she did anything wrong…."  (Compl. at ¶ 23, Exhibit B)  Plaintiff also objected to K.W. not being permitted to distribute a class survey and protested Mrs. Rust's position that the questions on the survey were in appropriate.  (*Id.*)  The wide-ranging June 1 e-mail included complaints that K.W. had not been provided with a complete school supply list and that K.W. had not being invited to a birthday party, alleging that certain students and their families shunned other students and their families, including K.W. and Plaintiff.  (*Id.*)  Plaintiff also forwarded Mrs. Rust's original e-mail, which discussed various confidential matters about both K.W. and her classmate, to all the other parents in the class.  (*Id.*)  Notably, nowhere in Plaintiff's June 1 e-mail did he request modifications for K.W., allege that Ellis was not providing K.W. with sufficient

modifications, or oppose conduct that was made unlawful by either the ADA or Section 504.  (Exhibit C).

With respect to K.W.'s alleged disability, Plaintiff contacted Ellis in July, 2016, just prior to the commencement of K.W.'s 5th grade year, and requested various modifications for K.W. due to a preliminary diagnosis of ADHD.  (Compl. at ¶ 6).  Ellis agreed to provide K.W. with the requested modifications.  (*Id*. at ¶ 7).  On March 7, 2017, after K.W. had undergone further evaluations, Plaintiff requested additional modifications for K.W.  (*Id*. at ¶ 8).  Ellis again agreed to provide K.W. with various modifications.  (*Id*. at ¶ 9).

Following termination of the Contract, this five-count lawsuit followed.  Claiming violations of the ADA, Section 504 and state law breach of contract, Plaintiff alleges, *inter alia*, that:

–Ellis terminated the Contract with him in retaliation for requesting modifications for K.W. in violation of Title V (Count I) and Section 504 (Count II);

–Ellis failed to provide K.W. with reasonable disability modifications during the 2016-17 school year in violation of Title III (Count III) and denied K.W. a FAPE in violation of Section 504 (Count IV); and

–Ellis unreasonably exercised its discretion to terminate the Contract, which equates to a breach of contract (Count V).

(Compl. at Counts I-V).

For each of the Complaint's five claims, Plaintiff demands the following relief:

(a) an order requiring Ellis to re-enroll K.W. for the 2018-19 school year and provide K.W. with reasonable modifications;
(b) a determination that Ellis denied K.W. a FAPE;
(c) compensatory education for the 2016-17 school year;
(d) reimbursement of application costs for K.W.'s new school;
(e) reimbursement of the difference in tuition and fees that Plaintiff would have paid to Ellis for the 2017-18 school year and what he paid to K.W.'s new school for the same year;

(f)  reimbursement of prepaid fees Plaintiff paid to Ellis;
(g) compensatory damages;
(h) punitive damages;
(i)  attorneys' fees and costs; and
(j)  other relief the Court deems just and proper.

(Compl. at p. 14).

In response to Plaintiff's Complaint, Ellis has filed a Motion, which is accompanied by this Memorandum of Law in Support, seeking to dismiss all five Counts of Plaintiff's Complaint on the following grounds:

- Count I (Retaliation under Title V the ADA) for failure to exhaust administrative remedies and failure to state a claim;
- Count II (Retaliation under Section 504) for failure to exhaust administrative remedies and failure to state a claim;
- Count III (Failure to provide disability modifications under Title III of the ADA) for failure to exhaust administrative remedies and lack of standing;
- Count IV (Failure to provide a FAPE under Section 504) for failure to exhaust administrative remedies; and
- Count V (Breach of Contract) lack of jurisdiction.

## III.    LAW AND ARGUMENT

### A.    Legal Standard

Upon a defendant's motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a federal court shall dismiss a lawsuit if: (a) a plaintiff does not have standing; or (b) if the plaintiff's complaint fails to state a claim upon which relief can be granted. *Batchelor v. Rose Tree Media School District*, 759 F.3d 266 (3d Cir. 2014); *Hibbard v. Penn-Trafford Sch. Dist.*, No. 13-622, 2014 U.S. Dist. LEXIS 20237, at *10-11 (W.D. Pa. Feb. 19, 2014).

A motion to dismiss under FED. R. CIV. P. 12(b)(1) challenges the jurisdiction of the Court to address the merits of the plaintiff's complaint. *Veith v. Pennsylvania*, 188 F. Supp. 2d 532 (M.D. Pa. 2002). If a claim must be administratively exhausted prior to

bringing a civil lawsuit, a party's failure to exhaust those administrative remedies will deprive a federal court of subject matter jurisdiction over that claim. *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 130 n.6 (3d Cir. 2017). Because a plaintiff's failure to exhaust administrative remedies is a jurisdictional issue, the appropriate device to raise this issue is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *Swope v. Central York School Dist.,* 796 F. Supp. 2d 592 (M.D. Pa. 2011). Unlike dismissal under FED. R. CIV. P. 12(b)(6), dismissal under Rule 12 (b)(1) for lack of subject matter jurisdiction is not a judgment on the merits of plaintiff's case, but only a determination of the court's lack of authority to hear the case. *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F. 2d 884 (3d Cir. 1977).

A federal court has jurisdiction over a case only if the plaintiff satisfies the standing requirements of Article III of the U.S. Constitution. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000). As set forth by the Supreme Court, to establish standing a plaintiff must show (1) he has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth,* 120 S. Ct. 693 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *see also, Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159 (3d Cir. 2006). Standing also encompasses a prudential component whereby courts decline to exercise jurisdiction over litigants attempting to assert the rights of another, claiming generalized grievances more appropriately addressed in the

representative branches, or where a litigant's complaint falls without the zone of interests protected by the law invoked." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013); *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. 08-5454RBKAMD, 2009 U.S. Dist. LEXIS 99606, 2009 WL 3584597, at *4 (D.N.J. Oct. 26, 2009) (citing *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)).  The Supreme Court has further explained that, "past exposure to illegal conduct does not in itself show a *present case or controversy* if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); *see also Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (same); *Anderson*, 934 F. Supp. at 538.  Without a showing of a present case or controversy, a plaintiff will lack standing.  *Anderson*, 934 F. Supp. at 538.  The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

A court may also dismiss a complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *Price v. Schwan's Home Services, Inc.,* No. Civ.A. 05-220J, 2006 WL 897721, at *2 (W.D. Pa. April 3, 2006).  Although a court deciding a Rule 12(b)(6) motion must liberally construe the complaint's allegations and draw all reasonable inferences in favor of the plaintiff, it does not have to accept or give credit to the complaint's bald assertions, legal conclusions, unsupported conclusions, unwarranted inferences, unwarranted deductions, and sweeping conclusions of law in the form of factual conclusions.  *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906

(3d Cir. 1997); *Simon v. Cebrick*, 53 F.3d 17, 19 (3d Cir. 1995); *Mastandrea v. Gurrentz Int'l Corp.*, 65 F.R.D. 52, 54 (W.D. Pa. 1974).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record.  *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).  The court may also consider undisputedly authentic documents that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on those attached documents.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

**B.    Counts I, II, III and IV must be dismissed because Plaintiff has failed to exhaust administrative remedies for his Section 504 and ADA claims.**

This Honorable Court lacks subject matter jurisdiction to hear Counts I, II, III and IV of Plaintiff's Complaint.  Because these counts assert claims that fall within the scope of the IDEA, i.e., claims that "relate to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child," they cannot be subject to judicial review until and unless the IDEA's administrative process[4] has been exhausted.  Plaintiff, who does not allege and cannot establish that he sought but was denied relief via that administrative process, lacks standing to bring claims under Section 504 and Titles III and V of the ADA.  Accordingly, these claims should be dismissed.

---

[4] The IDEA requires a state receiving federal education funding to provide a free appropriate public education to disabled children.  A parent who believes that a school who receives federal funding has failed to provide a free appropriate public education may request a due process hearing to seek relief from the school.  *See*, Fed. R.C.P. § 300.507.  A plaintiff must exhaust the IDEA administrative review process before filing a civil action seeking relief that is available under the IDEA.  *20 U.S.C. § 1415(l)*. *WB v. Matula*, 67 F. 3d 484 (3d. Cir. 1995).

It is well-settled that a plaintiff's disability discrimination and retaliation claims that seek relief which is also available under the IDEA must be administratively exhausted in the manner set forth in the IDEA even if the claims are brought to a federal court under different laws (such as Section 504 and/or the ADA). *Richter v. Sch. Dist.*, Civil Action No. 01-152 Erie, 2002 U.S. Dist. LEXIS 14703, *12 (W.D. Pa. Mar. 25, 2002)(J. McLaughlin); *see also*, *C.L. ex rel. K.B. v. Mars Area Sch. Dist.*, No. 2:14-cv-1666, 2015 U.S. Dist. LEXIS 84736, at *8 (W.D. Pa. June 30, 2015 (J. McVerry); *M.M. v. Tredyffrin/Easttown Sch. Dist.*, No. 06-1966, 2006 U.S. Dist. LEXIS 62918 (E.D. Pa. Sep. 1, 2006). The Third Circuit recently explained how the exhaustion requirement of the IDEA applies to non-IDEA claims in great detail in *Batchelor v. Rose Tree Media School District*, 759 F.3d 266 (3d Cir. 2014). In *Batchelor*, the appellant asserted claims for: (1) retaliation/failure to provide a FAPE in violation of the IDEA; (2) retaliation in violation of Section 504; and (3) retaliation in violation of the ADA. *Batchelor*, 759 F.3d at 270. As the *Batchelor* Court explained, whether exhaustion was required for non-IDEA claims depends on whether the plaintiff seeks relief that can be obtained under the IDEA. The *Batchelor* court specifically held that claims that relate to "the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child," must be administratively exhausted, even if brought under a different statute. *Id.* at 272. In so ruling, the *Batchelor* court held:

> In accord with two of our sister circuits who require IDEA exhaustion of retaliation claims, we conclude that Appellants' retaliation claims asserted under Section 504 of the Rehabilitation Act and ADA "relate unmistakably" to the provision of a FAPE… and are thus subject to the IDEA's exhaustion requirement. *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000) (finding that retaliation claims "relate unmistakably to the evaluation and educational placement of [a student], . . . and to the provision of a free appropriate education . . . ."); *see also, M.T.V. v. DeKalb Cnty. Sch. Dist.*,

10

> 446 F.3d 1153, 1158-59 (11th Cir. 2006) ("[R]etaliation claims clearly
> relate to [the disabled student's] evaluation and education, and, therefore,
> are subject to the [IDEA's] exhaustion requirement.").

*Id.* at 274.  *See also*, *Wellman v. Butler Area Sch. Dist.*, Civ. No. 13-cv-0616, 2015 U.S.

Dist. LEXIS 117146, 2015 WL 5156920, at *4 (W.D. Pa. Sept. 2, 2015) (discussing

cases where exhaustion of IDEA administrative remedies was required before

bringing Section 504 and ADA claims because they raised issues within the scope of

the IDEA such as school performance, educational evaluations and accommodations,

and the provision of an appropriate free education); *M.S. ex rel. Shihadeh v. Marple*

*Newtown Sch. Dist.*, 82 F. Supp. 3d 625, 632 n.8 (E.D. Pa. 2015); *E.K. v. River Dell*

*Reg'l Sch. Dist. Bd. of Educ.*, No. 11-cv-00687(CCC), 2015 U.S. Dist. LEXIS 38933,

2015 WL 1421616, at *4 (D.N.J. Mar. 26, 2015).  The *Batchelor* court supported its

holding by citing to Section 1415(l) of the IDEA, which it interpreted as "bar[ing] plaintiffs

from circumventing [the] IDEA's exhaustion requirement by taking claims that could

have been brought under [the] IDEA and repackaging them as claims under some other

statute." *Batchelor*, 759 F.3d at 272.

Courts of this circuit have repeatedly dismissed, for lack of subject matter

jurisdiction, Section 504 and ADA claims seeking a FAPE, compensatory education,

disability modifications and other equitable remedies if they were not administratively

exhausted.  *Hesling v. Avon Grove School Dist.,* 2010 WL 2649909 (E.D. Pa. 2010)

(finding exhaustion of administrative remedies required for ADA and Section 504 claims

where those claims were premised on "the same alleged retaliatory acts under the IDEA

claim" and the relief sought was the type available under the IDEA); *R.T. v.*

*Southeastern York School Dist.,* 2011 WL 587221 (M.D. Pa. 2007) (stating that in the

Third Circuit, the exhaustion requirement is a prerequisite for a district court to have subject matter jurisdiction over a claim under the IDEA, or any claim that seeks relief similar to that available under the IDEA); see also *Brandon V. v. Chichester School Dist.,* 2007 WL 2155722 (E.D. 2007) (finding exhaustion of administrative remedies required for Section 504 claim to the extent that the claim seeks relief that is also available under the IDEA).

Here, Counts I, II, III and IV assert Title III, V and Section 504 claims that seek the same relief (a FAPE, a compensatory education, and disability modifications for K.W.) available under the IDEA.   Because Plaintiff does not claim that he ever exhausted any administrative remedies for these claims, they should be dismissed with prejudice.

## C.   Counts I and II, which allege retaliation under Title V of the ADA and Section 504, must also be dismissed for failure to state a claim.

Plaintiff fails to set forth a retaliation claim under either Title V or Section 504 because the Complaint does not sufficiently plead the first and third elements[5] of a *prima facie* case of retaliation under either statute.[6]   First, the June 1, 2017 e-mail that

---

[5] To survive the motion to dismiss stage, a plaintiff alleging retaliation under either Title V or Section 504 must plead enough facts to set forth these three elements:

1. The plaintiff engaged in protected activity;
2. The plaintiff suffered an adverse action; and
3. The adverse action was causally related to the invocation of the plaintiff's protected activity.

*Krouse v. Am. Sterilizer Co.*, 126 F. 3d 494, 500 (3d Cir. 1997); *Lauren W. ex rel. Jean W. v. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[6] Courts apply similar legal standards to both ADA and Section 504 claims for both retaliation and failure to accommodate claims.   *Krouse*, 126 F.3d at 500 (3d Cir. 1997).   *Andersen v. N. Shore Long Island Jewish Healthcare Sys. Zucker Hillside Hosp.,* No. 12-CV-1049, 2013 U.S. Dist. LEXIS 29972, 2013 WL 784391, at *11 (E.D.N.Y. Jan. 23, 2013) ("A plaintiff's burden under the Rehabilitation Act is 'nearly identical' to that which plaintiff must meet pursuant to the ADA." (citation omitted)), report and recommendation adopted as modified, No. 12-CV-1049, 2013 U.S. Dist. LEXIS 28602, 2013 WL 784344

Plaintiff claims formed one of the bases of the alleged retaliation does not constitute the protected activity required under the first prong.    Second, Plaintiff fails to plead facts sufficient to establish a causal connection between the other protected activity alleged (last of which occurred on March 7, 2017) and Ellis's termination of the Contract months later, as required by the third prong).   (*Id.*, Comp at ¶ 23).   Accordingly, his two retaliation claims should be dismissed as a matter of law.

### i.    *Plaintiff's June 1 e-mail does not constitute protected activity*

Plaintiff's June 1 e-mail does not amount to protected activity as a matter of law. (Exhibit C).   That e-mail, which focused on a speech K.W. made to her class as the class president for the upcoming school year and alleged exclusion of K.W. and other students from social events for non-disability reasons, did not oppose any act or practice made unlawful by the ADA or Section 504.   It neither made a charge nor constituted assistance with or participation in an investigation, proceeding, or hearing under the ADA or Section 504.   *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3d Cir. 2007).

Not every complaint about unfair practices or perceived slights qualify as protected activity.   *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 583 (E.D. Pa. 2009).   The message must at a minimum convey the speaker's express or implicit protest of discriminatory practices that violate the federal anti-discrimination statutes or request a disability accommodation.   *Keystone Sch. Dist.*, Civ. A. No. 07-1335, 2008 U.S. Dist. LEXIS 65902, 2008 WL 3540603, at *9 (W.D. Pa. Aug. 12, 2008), *aff'd*, 335 F.

---

(E.D.N.Y. Mar. 1, 2013); *Goonewardena v. N. Shore Long Island Jewish Health Sys.,* No. 11-CV-2456 (MKB), 2014 U.S. Dist. LEXIS 41659, at *19-20 n.7 (E.D.N.Y. Mar. 26, 2014).

App'x 200 (3d Cir. 2009).   A general complaint of unfair treatment is insufficient to establish protected activity.   *Curay-Cramer v. Ursuline Academy of Wilmington, DE, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).   *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)("[N]ot every complaint about unfair practices or perceived slights qualif[ies] as 'protected activity.'");   *Cabrera-Diaz v. Penn Kidder Campus Jim Thorpe Area Sch. Dist.*, No. 3:08-CV-2192, 2011 U.S. Dist. LEXIS 13466, at *10-11 (M.D. Pa. Feb. 11, 2011).

The June 1 e-mail (Compl. at ¶¶ 21 & 31, Exhibit C) merely asserts general complaints and perceived slights.   It does not request any modifications for K.W. or make a report of discrimination or retaliation against K.W. or Plaintiff.   *See, McBride v. Hospital of the University of Pennsylvania*, No. CIV.A. 99-6501, 2001 U.S. Dist. LEXIS 15115, 2001 WL 1132404, at *2, 7 (E.D. Pa. Sept. 21, 2004)(finding no protected activity when an employee made a general complaint about being treated unfairly; the court stated that expressions of dissatisfaction and grievances about working conditions are not protected activity).

Plaintiff's alleged "express[ion] [of] concerns for K.W.'s mood and stress level" in the June 1 e-mail which is allegedly "significantly impacted by her disabilities" (Compl. at 31) does not qualify as protected activity.   This statement is not a request for a modification or opposition to unlawful activity.   In *Lackey v. Heart of Lancaster Regional Medical Center*, No. 16-3986, 704 Fed. Appx. 41, at *50 (3d. Cir. July 27, 2017), the Circuit Court held that merely mentioning or disclosing a disability to an employer was not protected activity.   *Lackey*, 704 Fed. Appx. at *50.   The *Lackey* court explained, "Lackey's statement to her supervisor that she had had an anxiety attack does not

constitute protected activity-she does not make an argument for how this could be construed as opposing conduct made unlawful by the ADA or a request for a reasonable accommodation.  Thus, it cannot constitute protected activity."  *Id.* at * 50. *See Prigge v. Sears Holding Corp.*, No. 09-175, 2010 WL 2731589, *25 (E.D. Pa. July 9, 2010)(plaintiff did not engage in protected activity when he informed employer that he suffered from bipolar disorder).

Because Plaintiff's June 1 email does not amount to protected activity as a matter of law, Plaintiff last engaged in protected activity on March 7, 2017, three months prior to Ellis's decision to terminate the Contract, when he allegedly requested additional modifications for K.W.  (Compl. at ¶¶ 6, 8).

ii.   ***Plaintiff does not allege facts sufficient to establish that Ellis's decision to terminate the Contract was causally related to his request for modifications.***

Plaintiff fails to plead sufficient facts to establish causation: *i.e.* that Ellis's June 29, 2017 termination of the Contract was causally related to either his July 7, 2016 or his March 7, 2017 requests for modifications for K.W.  First, Plaintiff cannot prove that the adverse action was causally related to either request because of their "temporal proximity" because of the months that separated them.  *See, Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000).  Second, he alleges no circumstantial facts or evidence from which a causal connection can be inferred in the absence of suspicious timing. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

The mere fact that an adverse employment action occurred after exercise of a protected activity is not enough to establish a causal link between the two events. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997).  A causal link will

only be inferred if the timing of the retaliatory action is "unusually suggestive." *Krouse,* 126 F.3d at 503.  When a causal connection relies on temporal proximity alone, courts in this circuit generally require that the adverse activity occur within ten days of the protected activity to qualify as "unusually suggestive."  *See*, *Rooks v. Alloy Surfaces Co., Inc.*, No. 09-839, 2010 WL 2697304, at *2 (E.D. Pa. July 6, 2010); *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014).

In *Krouse*, a case cited by Plaintiff in his Complaint, (Compl. at ¶ 30), the Third Circuit dismissed a plaintiff's retaliation claim holding that the plaintiff was unable to establish causation based upon timing alone.  *Krouse,* 126 F.3d at 503.  The *Krouse* court held that, "Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be "unusually suggestive" of retaliatory motive before a causal link will be inferred.  Here, the timing of the allegedly retaliatory action cannot, standing alone, support a finding of a causal link." *Id.*

In *Rooks*, the court granted the employer's motion to dismiss because the complaint asserted that the plaintiff's termination occurred fifty-five days after the protected activity (which is significantly less than the two time periods between Plaintiff's alleged protected activities and the challenged adverse action in the case at bar). *Rooks*, at *6.  Similarly, the Third Circuit in *Blakney* again recognized that in assessing whether an adverse action is causally related to a protected activity in a retaliation claim, temporal proximity of more than ten days usually does not qualify as "unusually suggestive," explaining, "We have found that a temporal proximity of two days is unusually suggestive of causation, *see Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d

Cir.1989) . . . *but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive.*"   *Blakney*, 559 F.App'x at 186 (emphasis added).

If a plaintiff cannot establish causation through "unusually suggestive" timing, he may do so through other circumstantial facts or evidence from which a causal connection can be inferred.  *Farrell*, 206 F.3d at 280-81.  Such facts or evidence include a pattern of antagonism by the employer from the time of the protected activity and the adverse employment decision and inconsistent reasons provided by the employer for the employee's discharge.  *Id.* at 281.

Here, Plaintiff allegedly engaged in protected activity on July 7, 2016 (almost a year prior to Ellis's termination of the Contract) and March 7, 2017 (over three months prior to Ellis's termination of the Contract), and, therefore, he cannot rely on temporal proximity alone to establish causation.  Plaintiff must, but does not, plead some other circumstantial facts or evidence that suggest a plausible connection between his request for modifications and Ellis's decision to terminate the Contract.  The Complaint does not allege that Ellis engaged in a pattern of antagonism, harassment, or mistreatment between the time of his requests for modifications and termination of the Contract.  Plaintiff does not claim that Ellis provided inconsistent reasons for its decision to terminate the Contract.  Plaintiff has failed to establish a necessary element of his retaliation claims (causation), and Counts I and II must be dismissed.

**D.    Count III, which alleges a failure to accommodate under Title III, must be dismissed for lack of standing.**

Because Title III claims only provide relief in the form of future injunctive relief, Plaintiff has standing if and only if K.W. is a student at Ellis, which she is not.  Given the

fatal flaws of Plaintiff's retaliation claims, Plaintiff is unlikely to ever acquire standing in the future. See supra Part III. B-C.

In order to obtain standing for prospective relief, plaintiffs must "establish a real and immediate threat that [they] would again be [exposed to the alleged violations of his lawful rights]." *Bardelli v. Allied Servs. Inst. Of Rehab Med.,* No. 14-691, 2016 U.S. Dist. LEXIS 135358 *(Sept. 30, 2016)* citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).   For example, in *Lujan,* the Court held that a stated intent to return "someday" to the source of the alleged injury is not sufficient. *Id.* at 560-61.   *See*, *e.g.*, *L.A. v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed.2d 675 (1983)(plaintiff lacked standing to request injunctive relief barring LAPD from use of control holds because "'odds' that [plaintiff] would not only again be stopped for a traffic violation but would also be subjected to a chokehold without any provocation whatsoever" were not sufficient to suggest imminent harm).   Standing is evaluated at the time of the filing of the complaint. *Friends of the Earth,* 538 U.S. at 190-91.

Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider only the possibility of future violations.   Plaintiffs seeking prospective injunctive relief must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement necessary to establish standing. *Access 4 All, Inc. v. Absecon Hospitality Corp.*, No. 04-6060, 2006 U.S. Dist. LEXIS 79264, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006) (quoting *Lyons*, 461 U.S. at 103-4.

To determine whether a future injury is concrete and particularized for the purpose of a Title III claim, the Court must consider the likelihood of K.W. returning to

Ellis. *See Access 4 All,* 2006 U.S. Dist. LEXIS 45499 at *3.  In *Bardelli v. Allied Servs. Inst. of Rehab. Med.*, No. 14-0691, 2016 U.S. Dist. LEXIS 135358, at *23-24 (M.D. Pa. Sept. 30, 2016), the court dismissed a parent's Title III claim seeking prospective injunctive relief for lack of standing.  The Bardellis sought an order compelling the school to provide their child with certain disability modifications, including permitting their child to attend school with a service dog.  *Bardelli,* 2016 U.S. Dist. LEXIS 135358 at *23-24.  In granting the defendant's motion to dismiss, the *Bardelli* court recognized that the student no longer attended the school and the parents had not shown that there was a likelihood of the child returning to the school in the future and, therefore, the parents lacked standing.  *Id.* at *23-24.

Here, Plaintiff's Title III claim does not provide him with relief in the form of an order compelling K.W.'s re-enrollment to Ellis.  See infra, Section III, Part E.  Therefore, Plaintiff must point to a separate viable legal claim that, if successful, would compel Ellis to re-enroll K.W.  See, supra, Section III, Parts A-B, infra, Section III, Part I.  Plaintiff cannot do so and, as a result, he lacks standing to proceed with his Title III claim.

**E.    In addition to lacking administrative exhaustion and standing, Count III's claim seeks monetary damages which are not available under Title III of the ADA.**

Plaintiff's demand for compensatory, punitive and other monetary damages is impermissible under Title III of the ADA.  (Prayer for Relief at (d-h)).  His request for an order requiring Ellis to reinstate K.W. is also proscribed.  (Prayer for Relief at (a)).

Neither monetary damages nor civil penalties are available to a private plaintiff under Title III of the ADA.  *Anderson,* 943 F. Supp. 2d 538; *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 U.S. Dist. LEXIS 83449, 2012 WL 2196320, at *4 (E.D. Pa.

June 14, 2012); *Bowers v. NCAA*, 346 F.3d 402, 433 (3d Cir. 2003)(citing *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002)(holding Title III defendants cannot be liable for money damages.).  Various courts, including all of the district courts in Pennsylvania and other circuit courts, have held that Title III provides private parties with the right to injunctive relief to stop or prevent *future* disability discrimination in a place of public accommodation, but it provides no right to monetary damages for past discrimination. *Anderson*, 943 F. Supp. 2d at 538; *Reviello*, 2012 U.S. Dist. LEXIS 83449, at *4.  *See also*, *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004) (noting that a "private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages").

Under Title III, plaintiffs are only entitled to seek "*preventive* relief;" courts look past prior violations and only consider if the party is entitled to *future* relief.  42 U.S.C. § 2000a-3 (emphasis added).  In *Fiorica v. University of Rochester, School of Nursing*, No. 07-CV-6232T, 2008 U.S. Dist. LEXIS 27638, 2008 WL 907371, at *3 (W.D.N.Y. Mar. 31, 2008), the court held that the injunctive relief sought by the plaintiff (reinstatement to a nursing program) was not preventive relief, and therefore, not available pursuant to Title III of the ADA.  Accordingly, Plaintiff's demand for compensatory, punitive and other monetary damages and for an award compelling Ellis to re-enroll K.W. for any alleged violation of Title III of the ADA should be dismissed with prejudice.

**F.    In addition to lacking administrative exhaustion and failing to state a claim, Count I's claim seeks compensatory or punitive damages which are not available under Title V of the ADA.**

The compensatory and punitive damages sought in Count I of Plaintiff's Complaint are not permissible in an ADA retaliation claim. The United States District Court for the Western District of Pennsylvania in *Sabbrese v. Lowe's Home Ctrs., Inc.,* 320 F. Supp. 2d 311, 332 (W.D. Pa. 2004) (J. Conti), clearly held that compensatory and punitive damages are not available in ADA retaliation cases and granted the defendant's motion to dismiss and strike. The United States District Courts for the Eastern and Middle Districts of Pennsylvania have also held that compensatory and punitive damages are not recoupable in an ADA retaliation claim. *Ramdeen v. Trihop 69th St., LLC*, No. 16-1361, 2017 U.S. Dist. LEXIS 33659, *14 (E.D. Pa. Mar. 9, 2017); *Wilkie v. Luzerne Cty.,* No. 3:14cv462, 2014 U.S. Dist. LEXIS 142015, at *8 (M.D. Pa. Oct. 6, 2014) (The ADA's remedial structure does not allow for an aggrieved individual to recover compensatory and punitive damages in an ADA retaliation case.); *Greineder v. Masonic Homes of the R.W. Grand Lodge*, No. 13-2376, 2014 U.S. Dist. LEXIS 56269, at *9-13 (E.D. Pa. Apr. 23, 2014) (compensatory and punitive damages not recoverable in an ADA retaliation case); *Santana v. Lehigh Valley Hosp. & Health Network*, No. CIV.A.05-CV-01496, 2005 WL 1941654, at *2 (E.D. Pa. Aug. 11, 2005) (holding that plaintiff's request for compensatory and punitive damages must be stricken); *Shellenberger v. Summit Bancorp, Inc.*, No. 99-5001, 2006 U.S. Dist. LEXIS 36314, at *13 (E.D. Pa. June 2, 2006).

Other circuits have adopted the position taken by Pennsylvania's federal district courts. See *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1268 (9th Cir. 2009); *Bowles v. Carolina Cargo Inc.*, 100 F. App'x 889 (4th Cir. 2004) (non-precedential); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (7th Cir.), cert. denied, 542 U.S. 932,

124 S. Ct. 2876, 159 L. Ed. 2d 798 (2004); *Rhoads v. FDIC*, 94 F. App'x 187 (4th Cir.) (non-precedential), cert. denied, 543 U.S. 927, 125 S. Ct. 331, 160 L. Ed. 2d 226 (2004).  Plaintiff's demand for compensatory and punitive damages under Title V must be struck from the Complaint, with prejudice.

**G.      In addition to lacking administrative exhaustion, the claims in Counts II and IV seek punitive damages which are not available under Section 504.**

Punitive damages are not recoverable under Section 504.  The remedies for violation of Section 504 "are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964." *Barnes v. Gorman*, 536 U.S. 181, 122 S. Ct. 2097 (2002).  These remedies include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract, *Barnes,* at 187, but does not include punitive damages.  *See also*, *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007).  Plaintiff's requests for punitive damages under both of his Section 504 claims must be struck from the Complaint, with prejudice.

**H.      Because Plaintiff's federal claims should be dismissed, this Court should decline to exercise jurisdiction over Count V, which sets forth a breach of contract claim under state law.**

Absent extraordinary circumstances, a federal district court should decline to exercise jurisdiction over state law claims where federal claims over which it had original jurisdiction are not viable.  *Shaffer v. Albert Gallatin Area School Dist.,* 730 F.2d 910 (3d Cir. 1984).  *See also*, *Kallick v. Northwest Airlines Corp.*, 372 Fed. App'x. 317 (3d Cir. 2010); *Dodge v. Susquehanna Univ.*, 796 F. Supp. 829, 831 (M.D. Pa. 1992)(explaining that it would also be inappropriate for court to retain jurisdiction over a breach of contract claim after dismissing federal claims and having no basis for

diversity jurisdiction).  Because Plaintiff's four federal claims under Section 504 and the ADA are not viable as a matter of law, and extraordinary circumstances do not exist, this Honorable Court should dismiss Plaintiff's breach of contract claim for want of jurisdiction.

**I.     In addition to dismissing Plaintiff's state law breach of contract claim for lack of jurisdiction, Count V, which seeks reinstatement of K.W. to Ellis, is not available under a personal services contract.**

Plaintiff's demand for an order requiring Ellis to reinstate K.W. is impermissible because reinstatement or reenrollment is not a permissible form of specific performance in personal services contracts. *McMenamin vs. Philadelphia Transp. Co.*, 51 A.2d 702, 703 (Pa. 1947).  In *McMenamin vs. Philadelphia Transp. Co.*, 51 A.2d 702, 703 (Pa. 1947), the Pennsylvania Supreme Court held that the equitable remedy of specific performance is not available for breach of a contract for personal services and the Court refused to grant equitable relief in the form of specific performance to reinstate former employees alleging breach of their employment contract.  In *Maritrans G.P. Inc. vs. Pepper, Hamilton & Scheetz*, 572 A.2d 737, 744 (Pa. Super. 1990), rev'd on other grounds, 602 A.2d 1277 (Pa. 1992), a client could not "compel the specific performance" of a personal services agreement with his attorneys.  *See also*, *Nicholas v. Pa. State Univ.,* No. 4:CV-96-1101, 1998 U.S. Dist. LEXIS 23475, at *12 (M.D. Pa. Nov. 3, 1998), the court, applying Pennsylvania law, ruled that specific performance in the form of reinstatement was not an allowable remedy in a breach of an employment contract claim.

In *Bloch v. Hillel Torah North Suburban Day Schl.,* 426 N.E. 2d 976, 977 (Ill. App. 1981), a case with similar facts to the instant matter, the plaintiff-parents were denied

specific performance on their breach of contract claim in the form of the re-enrollment of their daughter to a private day school.   In *Bloch*, the Court explained the reasons for denying the plaintiffs specific performance:

> The reasons for denying specific performance in such a case are as follows: the remedy at law is adequate; enforcement and supervision of the order of specific performance may be problematic and could result in protracted litigation; and the concept of compelling the continuance of a personal relationship to which one of the parties is resistant is repugnant as a form of involuntary servitude. 11 Williston on Contracts § 1423, at 786-87 (3d ed. 1968). … Applying these principles to the present case, we believe that the trial court properly granted summary judgment in favor of defendant. It is beyond dispute that the relationship between a grade school and a student is one highly personal in nature. Similarly, it is apparent that performance of such a contract requires a rendition of a variety of personal services. Although we are cognizant of the difficulties in duplicating the personal services offered by one school, particularly one like defendant, we are even more aware of the difficulties pervasive in compelling the continuation of a relationship between a young child and a private school which openly resists that relationship.

*Bloch*, 426 N.E. 2d at 977.

Here, the Contract between Plaintiff and Ellis is a personal services contract and Plaintiff's demand for an order requiring Ellis to re-enroll K.W. and provide her educational service is not an available remedy as a matter of law.  Accordingly, even if this Honorable Court would retain jurisdiction over Plaintiff's state law breach of contract claim, Plaintiff's demand for an order compelling Ellis to re-enroll K.W. must be struck from the Complaint with prejudice.

## IV.   CONCLUSION

For the reasons stated above, the Court should grant Ellis's Motion and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

TUCKER ARENSBERG, P.C.

By:     */s/ Katherine Koop Irwin*
        Albert S. Lee, Esquire
        Pa. I.D. #64201
        Katherine Koop Irwin, Esquire
        Pa. I.D. #206432


        1500 One PPG Place
        Pittsburgh, PA  15222
        (412) 566-1212

        Counsel for Defendant,
        The Ellis School