# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| K.W., a minor by parent and natural guardian NICHOLAS WISER; and NICHOLAS WISER, in his own right, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 17-1189 ) |
| v. | ) Judge Cathy Bissoon ) |
| THE ELLIS SCHOOL, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM ORDER

Pending before the Court is a Motion to Dismiss filed by The Ellis School ("Ellis").[1] (Doc. 14.) For the reasons that follow, Ellis's Motion will be granted in part and denied in part.

## BACKGROUND

Plaintiffs bring this action claiming a violation of Title III of the Americans with Disabilities Act of 1990 ("Title III"), a violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and a breach of contract claim against Ellis. (Complaint, Doc. 1.)

Plaintiff K.W. suffers from an anxiety disorder and ADHD. (Id. at ¶ 1.) She was a student at Ellis from elementary school through the fifth grade. (Id. at ¶ 5.) On July 7, 2016, her father, Plaintiff Nicholas Wiser, provided Ellis with an evaluation report confirming a preliminary diagnosis of ADHD. (Id. at ¶ 6.) The evaluation recommended that K.W. receive coaching of verbal mediation strategies, be provided with a written checklist for steps to complete a task, receive assistance with structure planning including the use of a planning guide,

---

[1] In Ellis's reply brief, Ellis withdrew its argument concerning failure to exhaust administrative remedies. (Doc. 21 at 2 n.2.)

have large assignments broken down into smaller steps, have a teacher review her assignment planner with her, and have her be provided with to-do lists and be given other assistance in initiating her work. (Id.) Ellis agreed to provide all of these accommodations. (Id. at ¶¶ 7, 9.)

On March 7, 2017, Mr. Wiser gave a letter from K.W.'s social worker to Ellis that confirmed K.W.'s diagnosis of ADHD, diagnosed her with an anxiety disorder and made various requests for modified accommodations. (Id. at ¶ 8.) Specifically, the social worker recommended extra time on tests, extra instructional time as needed, support in transitions throughout the day, check-ins throughout the day regarding mood and stress levels, a regular meeting with a support teacher to verify understanding of basic organizational and test preparation skills, and preferential seating in classes away from typical distractions. (Id.) Despite agreeing to implement all of the requested school-based accommodations, Ellis only occasionally implemented one—it sometimes provided K.W. with extra time on tests. (Id. at ¶ 9.)

At the end of the 2016-17 school year, K.W. ran for sixth grade president and won. (Id. at ¶¶ 10, 13.) Her campaign platform emphasized the need for greater inclusivity, a support group for bullying victims, the end of stealing, better organization, and changes to school lunches and school activities. (Id. at ¶ 11.) Concerned by two of the issues set forth in her platform, teachers at Ellis asked her to clarify her comments about disorganization and stealing. (Id. at ¶ 12.) They also informed her that the current class president's feelings had been hurt by what she had said in her campaign speech. (Id. at ¶ 14.)

In order to prepare for her term as president, K.W. distributed a class survey. (Id. at ¶ 14.) After seeing a student with the survey, one of the teachers took it and threw it away in front of K.W. (Id. at ¶ 15.) K.W. began to become stressed and felt "like trash." (Id. at ¶ 17.)

2

And, unfortunately, according to her medical records, K.W.'s disabilities are exasperated by her mood and stress levels. (Id.)

In preparation for the 2017-18 school year, Mr. Wiser executed a contract with Ellis that included the following provision:

> I (we) and my (our) daughter agree to comply with and be subject to the Schools' rules and policies as set forth, including but not limited to, the Family Handbook, as amended from time to time. The School believes positive and constructive working relationships between the School, the student, and the student's parent(s) (or guardian(s)) are essential to the fulfilment of the School's mission. Thus, the School *reserves the right to discontinue enrollment or decline re-enrollment of the student if the School concludes the actions of a parent (or guardian) makes such a positive and constructive relationship impossible or seriously interfere with the School's accomplishment of its educational purposes*, or if Ellis concludes that the needs or demands made by or on behalf of the student place an undue or unreasonable burden on Ellis' resources. Ellis further reserves the right to remove a student at any time if, at its sole discretion, it concludes that the student's industry, progress, conduct, or influence on or off campus are not keeping with Ellis' standards. The decision of the School in these regards shall be final.

(Id. at ¶ 19 (emphasis added).)

On June 1, 2017, the Head of K.W.'s middle school, Michelle Rust, emailed Mr. Wiser explaining that some of K.W.'s classmates' feelings were hurt by her campaign speech, and that prior to distributing any future surveys, she should get them approved first. (Id. at ¶ 20.) Later that same day, Mr. Wiser sent a four-page response to Head Rust and included the other parents and guardians in the fifth grade class as recipients. (Id. at ¶ 21; see Exhibit B to Defendant's Brief Supporting its Motion to Dismiss, hereinafter "Mr. Wiser's Email," Doc. 15-2.[2]). He

---

[2] Matters of public record and "document[s] integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Ellis attached Mr. Wiser's June 1, 2017 email, which is explicitly relied on in the Complaint. The Court thus takes notice of Mr. Wiser's Email and may consider its contents without converting the motion to dismiss into one for summary judgment.

3

explained that K.W. regularly came home from school devastated by how she had been treated by students and faculty alike and that he was concerned for her wellbeing. (Complaint ¶ 21; Mr. Wiser's Email.) He tried to clarify why he believed some of her words and actions had been misinterpreted and emphasized that the last minute nature of some of Ellis's activities created problems for her and presumably for some of the other students. (Complaint ¶ 21; Mr. Wiser's Email.) Finally, he advocated for a more inclusive environment at Ellis. (Complaint ¶ 21; Mr. Wiser's Email.)

In the years since K.W. started attending Ellis, Mr. Wiser has had numerous discussions and sent numerous emails to Ellis regarding K.W.'s symptoms and behaviors. (Complaint ¶ 22.) These meetings and emails related to the issues raised in Mr. Wiser's Email. (Id.)

On June 29, 2017, Mr. Wiser learned that Ellis had decided to discontinue K.W.'s enrollment. (Id. at ¶ 23.) Ellis explained that Mr. Wiser had exercised "poor judgment" in sending the June 1, 2017 email to all parents and guardians of fifth grade students; that the email contained "a number of unfounded statements about Ellis, the Middle School administration, faculty, families, and students"; that Mr. Wiser had a low regard for the interests of Ellis, its students, and their families; and that Ellis was exercising its discretion to discontinue K.W.'s enrollment based on its determination that Mr. Wiser's actions made a positive and constructive relationship impossible, or seriously interfered with the school's accomplishment of its educational purpose. (Id.) Ellis refunded K.W.'s tuition for the 2017-18 year but failed to refund $175 in prepaid fees. (Id. at ¶ 24.) K.W. is presently enrolled at St. Edmund's Academy, and the tuition there is $5,146.71 more than at Ellis. (Id. at ¶ 26.)

**ANALYSIS**

**I.  Motion to Dismiss Count III pursuant to Rule 12(b)(1) for Lack of Standing**

Ellis argues that Plaintiffs' Title III claims should be dismissed because Plaintiffs lack standing, as K.W. is not a student at Ellis and is unlikely to ever acquire standing in the future as reinstatement is not an available remedy for any of Plaintiffs' causes of action. (Defendant's Brief Supporting its Motion to Dismiss, hereinafter "MTD Brief," 17-18, 23-24 Doc. 15.)

The only disputed element of standing is redressability.  Here, given Ellis's past conduct, Plaintiffs aver that this element is satisfied.  Specifically, if K.W. is re-enrolled at Ellis pursuant to Plaintiffs' viable Rehabilitation Act claim, there remains a very real risk that K.W. will continue to be targeted and harmed by Ellis's unlawful refusal to grant K.W. equal access to Ellis's educational programs and extracurricular activities.[3]  (Complaint, at ¶¶ 44-53; Plaintiffs' Response Brief, at 6-7).

To show redressability, plaintiffs must allege facts showing that "it [is] 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The lone remedy available in a Title III case is injunctive relief.  Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013).  To establish standing in an action for injunctive relief, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct." Doe v. Nat'l Bd. of Med. Examiners, 210 F. App'x 157, 159-60 (3d Cir. 2006) (citation omitted).  "Past illegal

---

[3] In addition to reinstatement at Ellis, Plaintiffs request the following prospective relief for K.W.: the same "level of financial aid [as before,] her title of class president, and also to provide reasonable accommodations, including but not limited to extra instructional time as needed, support in transitions throughout the day, check-ins regarding stress and mood levels, a regular meeting with a support teacher to verify understanding of basic skills for organization, test preparations and prioritizing, preferential seating in classes away from typical distractions, and additional time on tests." (Complaint ¶ 77(a).)

conduct is insufficient to warrant injunctive relief unless it is accompanied by 'continuing, present adverse effects.'" Id. at 159-60 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). Although in its MTD Brief, Ellis initially asserted that reinstatement is not possible based upon Plaintiffs having failed to administratively exhaust their claims, (MTD Brief 19), Ellis has since withdrawn that argument in its reply, (Defendant's Reply Brief 1 n.2, Doc. 21).

Ellis's lone basis for challenging redressability is that K.W. cannot be reinstated given the fact that the Wisers' contract with Ellis was a personal service contract and personal service contracts do not afford parties the right to reinstatement. As set forth below, the contract between Ellis and Mr. Wiser is not a personal service contract and, as a result, K.W. may yet be reinstated at Ellis. Furthermore, Plaintiffs have requested injunctive relief after K.W. is reinstated, that is, that K.W. be granted equal access to Ellis's educational programs and extracurricular activities; at this juncture, the Court cannot say Plaintiffs will be unable to prevail on their claim for injunctive relief. As a result, the Court concludes that Plaintiffs have sufficiently pleaded redressability and Plaintiffs have standing to pursue their Title III claim.

## II. Motion to Dismiss under Rule 12(b)(6)[4]

### A. *Prima facie case of Retaliation*

Ellis argues that Counts I and II of Plaintiffs' Complaint, which allege retaliation, must be dismissed for failure to sufficiently plead a protected activity and causation. (MTD Brief 12.) To establish a prima facie case of retaliation under the ADA and Rehabilitation Act, a plaintiff

---

[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

6

must show (1) a protected activity, (2) adverse action, and (3) a causal connection between the protected activity and the adverse action. EEOC v. Allstate Ins. Co., 778 F.3d 444, 449 (3d Cir. 2015) (ADA); Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (Rehabilitation Act). A person engages in protected activity where the person opposes "'any act or practice made unlawful [by the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under [the ADA]." Allstate Ins. Co., 778 F.3d at 449 (quoting 42 U.S.C. § 12203(a)). A good faith request for an accommodation is protected activity. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003).

At this juncture, Ellis does not contest that Mr. Wiser's emails to the school dated July 7, 2016 and March 7, 2017, explaining K.W.'s disabilities and requesting accommodations for her, were protected activities within the meaning of the ADA and Rehabilitation Act. (MTD Brief 15.) Rather, Ellis argues that Mr. Wiser's Email on June 1, 2017 was not a protected activity. (Id. at 13-15.) Viewing the Complaint and the email in the light most favorable to the nonmoving party, there are aspects of the June 1, 2017 email that plausibly amount to protected activity given that Ellis was intimately aware of K.W.'s disabilities and her triggers. For example, Mr. Wiser reiterated in the June 1, 2017 email K.W.'s need for organization and how Ellis was, in his view, coming up short in accommodating her needs in that respect. (Mr. Wiser's Email ("[s]uch disorganization spans the school year . . . . many of us, [K.W.] included, hope it doesn't go like that again in sixth grade.").) Mr. Wiser also requested, both implicitly and explicitly, that the school take steps to minimize its role in elevating her stress levels, which were being elevated due to the manner in which the school was handling their response to K.W.'s campaign and presidency. (Id. ("[K.W.] has been singled out and even ***harassed***

7

multiple times over the past few weeks by teachers. . . . In light of reassurances from having discussed this before, I've tried to be patient . . . but after these past two weeks, I cannot sit idly by while my child is vilified and made to feel she did anything wrong by finally standing up for herself and others in bringing this up.").) As described above, Ellis was aware that both disorganization and stress exacerbated K.W.'s disabilities. Thus, viewed in the light most favorable to Plaintiffs, Mr. Wiser's June 1, 2017 email requests that Ellis promptly implement appropriate school-based accommodations in response to the events described in the email.

The Third Circuit has not addressed whether the "but for" causation standard laid out in University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013), for Title VII claims is applicable in the context of ADA or Rehabilitation Act cases. Proudfoot v. Arnold Logistics, LLC, 629 F. App'x 303, 308 n.5 (3d Cir. 2015) (declining to address whether the "but for" causation standard also applies to retaliation claims under the ADA). But see Rocco v. Gordon Food Serv., 2017 WL 1355434, at *9 (W.D. Pa. Apr. 13, 2017) (applying the "but for" causation standard in a Rehabilitation Act case). As Plaintiffs' allegations suffice at this juncture under the more stringent "but for" causation standard, the Court need not decide whether a more lenient causation standard applies. Thus, the Court applies the following standard:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. . . . In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation.

Lauren W. ex rel. Jean W., 480 F.3d at 267 (citation omitted). A causal connection between the protected activity and the alleged retaliatory conduct may exist where the plaintiff engages in both protected and unprotected activity. P.N. v. Greco, 282 F. Supp. 2d 221, 242 (D.N.J. 2003).

8

The parties agree for the purpose of this motion that Ellis's decision to discontinue K.W.'s enrollment was an adverse action. Ellis argues that Plaintiffs have insufficiently pleaded a causal connection. (MTD Brief 17.) Viewing the facts in the light most favorable to Plaintiffs, Mr. Wiser requested or renewed his request for accommodations for his daughter at least three times in a one-year period: July 7, 2016, March 7, 2017, and June 1, 2017. Ellis largely ignored his requests and then discontinued K.W.'s enrollment shortly after Mr. Wiser's June 1, 2017 email, attributing its decision to the content of the email. As stated above, while there are clearly aspects of that email that do not fall under the purview of the retaliation provision, other aspects plausibly amount to protected activity when read in the light most favorable to the Plaintiffs. Thus, Plaintiffs have plausibly stated a prima facie case for retaliation and Ellis's motion to dismiss as to this argument will be denied.

> B. *Damages*

Ellis also argues correctly that not all of the damages Plaintiffs have pleaded are available for every count. (MTD Brief at 19.) Punitive damages and compensatory damages are unavailable under the ADA's retaliation statute. See Sabbrese v. Lowe's Home Ctrs., Inc., 320 F. Supp. 2d 311, 332 (W.D. Pa. 2004). Similarly, punitive damages are not available under § 504 of the Rehabilitation Act. Barnes v. Gorman, 536 U.S. 181, 185, 189 (2002). Only prospective injunctive relief is available in Title III cases; monetary damages are not available. Anderson, 943 F. Supp. 2d at 538. Therefore, Ellis's motion will be granted with respect to dismissal of claims to the extent that those claims request unavailable damages.

### C. Pennsylvania Breach of Contract Claim[5]

Ellis argues that K.W.'s reinstatement or reenrollment is not possible because she was a student pursuant to a personal service contract and specific performance is not an available remedy for personal service contracts. (MTD Brief 21.) "[T]he relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause of action against said institution for breach of contract where the institution ignores or violates portions of the written contract." J.K. v. The Hill Sch., 2017 WL 1407438, at *4 (Pa. Super. Ct. Apr. 20, 2017) (quoting Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. 1999)). Contracts between an educational institution are reviewed like "any other agreement between two private parties." Reardon v. Allegheny Coll., 926 A.2d 477, 480 (Pa. Super. Ct. 2001)).

Curiously, while both parties agree Plaintiffs' contract with Ellis is a personal service contract, neither party cites any Pennsylvania case law concerning private schools in support of their legal conclusions. A personal service contract is one that has a personal and non-delegable character. 12 Corbin on Contracts § 65.25 (2018). Traditionally, equitable relief is not available pursuant to a personal service contract because such relief might violate the Thirteenth Amendment, or advance involuntary personal servitude. Id. A contract with a private institution as opposed to a private party does not raise such a concern. Indeed, a contract with a private school is more akin to a building contract that can be performed by multiple individuals. Carlock v. LaSalle Extension Univ., 185 F.2d 594, 595 (Pa. 1950). Recently, the Superior Court of Pennsylvania addressed whether a former student of a private school was entitled to a preliminary injunction, a form of equitable relief; instead of deciding that equitable relief would

---

[5] This Court retains supplemental jurisdiction over Plaintiffs' breach of contract claim. 28 U.S.C. §§ 1367(a), (c).

be unavailable because the contract was a personal service contract, the court addressed the case on the merits.[6] The Hill Sch., 2017 WL 1407438, at *2-*3. Ellis's argument is unfounded because specific performance—in this case, reinstatement—is available as a remedy. Accordingly, Ellis's motion to dismiss will be denied as to this count.

\* \* \*

For the reasons above, Defendant's Motion to Dismiss (**Doc. 14**) is **GRANTED** in part as to limitations on available damages and **DENIED** as to all other arguments.

November 13, 2018                             s\Cathy Bissoon
                                              Cathy Bissoon
                                              United States District Judge

cc (via ECF email notification):

All counsel of record

---

[6] Hanover Assocs. v. Twp. of Hanover, 707 A.2d 1178, 1181 (Pa. Commw. Ct. 1998) (a preliminary injunction is a form of equitable relief).